**CONTINUATION**

I, Allen Madden, declare the following under penalty of perjury:

**INTRODUCTION, AGENT BACKGROUND, AND PURPOSE OF THE WARRANT**

1.    The facts of this case, as more fully detailed below, reveal that Griselda MONTOYA-Perez, a native and citizen of Mexico, was previously removed from the United States, and later reentered the United States without permission at an unknown date.

2.    I am familiar with the information contained in this continuation based upon the investigation I have conducted and based on information provided to me by other law enforcement officers. The facts in this continuation come from my personal observations, training, experience, and information obtained from other agents and witnesses. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

3.    Title 8, United States Code, Section 1326(a) criminalizes reentry without permission of aliens who have been previously removed. The elements of the offense are that: (1) the person is an alien; (2) the person was removed from the United States; (3) the person is thereafter found in the United States; and (4) the person did not obtain permission from the Attorney General to reapply for admission. The offense is punishable by up to two years in prison. 8 U.S.C. § 1326(a).

4.    I, Border Patrol Agent (BPA) Allen Madden, am a United States Border Patrol Agent with the United States Department of Homeland Security, United States

Border Patrol. I have been employed in this capacity since October 5, 2009. Currently, I am assigned to the Sault Ste. Marie Border Patrol Station. As part of my duties as a Border Patrol Agent, I am authorized to investigate violations of laws of the United States, including violations pertaining to the reentry of removed aliens, in violation of U.S.C. § 1326(a) Reentry of Removed Aliens. I graduated from the Federal Law Enforcement Training Center's (FLETC) Training Program, where I was trained in immigration law.

5.    This continuation contains information necessary to support a finding of probable cause to charge MONTOYA-Perez with a violation of 8 U.S.C. § 1326(a), which makes it a crime for any alien that has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter enters, or is at any time found in, the United States.

6.    The facts set forth herein are based upon my personal knowledge as well as information provided by other law enforcement officers to include Border Patrol Agents and records checks of law enforcement databases. I have reviewed the official immigration file relating to MONTOYA-Perez, which attests to the following.

### FACTS ESTABLISHING PROBABLE CAUSE

7.    On October 6, 2009, MONTOYA-Perez was encountered in the United States near Nogales, Arizona and received an Expedited Removal with a five-year entry ban. MONTOYA-Perez was removed via the Nogales, Arizona Port of Entry on October 6, 2009.

8.    On August 25, 2025, United States Border Patrol Agent Eric Cole was

2

contacted by a Chocolay Township police officer regarding a traffic stop the Chocolay Township officer conducted on August 24, 2025. The involved vehicle had been traveling 37 mph in a 45-mph zone and had broken taillights on both sides. The officer advised the vehicle was a tan Chevrolet Suburban bearing Alabama registration A3544W with a registered owner identified as T.O.[1] The Chevrolet Suburban was occupied by four males. The front-seat passenger stated the vehicle was registered to his uncle, J.G.,[2] and that he did not know T.O. The front-seat passenger stated that none of the other occupants spoke English.

9. The front-seat passenger stated that none of the occupants had physical identification cards on them, but he provided names and dates of birth for all the occupants. The Chocolay Township officer attempted to run the occupants via LEIN. The front-seat passenger came back with a valid Michigan identification card; none of the other occupants could be located in LEIN. The front-seat passenger told the officer one of the rear passengers did not have legal papers. He informed the officer that the occupants were working at a construction site at the Fairfield Inn and were staying at the Brentwood Motor Inn.

10. Based on the names and dates provided to the Chocolay Township officer, BPA Cole conducted immigration record checks on all four occupants and determined at least two were amenable to removal from the United States.

11. Knowing at least two foreign nationals amenable to removal from the

---

[1] The full name of T.O. is known to me. I have identified them by their initials to protect their identity.
[2] The full name of J.G. is known to me. I have identified them by their initials to protect their identity.

United States were utilizing the Chevrolet Suburban, BPA Cole and I conducted surveillance between August 27, 2025, and August 29, 2025. On the morning of August 28, 2025, at approximately 8:00 a.m., I observed the vehicle at the Brentwood Motor Inn in Marquette, MI. I then traveled to the Fairfield Inn in Marquette, MI, and observed the vehicle there at approximately 9:00 a.m. on August 28, 2025.

12. On August 29, 2025, at approximately 8:00 a.m., BPA Cole observed the Chevrolet Suburban travelling east on Highway 41 toward the Fairfield Inn. At approximately 8:02 a.m., BPA Cole activated his emergency lights and sirens and conducted a vehicle stop on the Chevrolet Suburban on Highway 41 near Wilson St, in Marquette County, in the Northern Division of the Western District of Michigan. The Chevrolet Suburban was occupied by four individuals. BPA Cole proceeded to conduct an immigration inspection on all four individuals and concluded three of the four were illegally present in the United States. All three freely admitted to being illegally present without legal documentation to be in or remain in the United States. One of those three subjects was identified as MONTOYA-Perez. All three individuals identified as being illegally present were arrested and transported to the Marysville Border Patrol Station for further processing. The fourth individual, who had been the front-seat passenger in the August 24, 2025 traffic stop, was allowed to leave the scene.

13. MONTOYA-Perez was fingerprinted and photographed. These images were entered in the Automated Biometric Identification System (IDENT) and the Integrated Automated Fingerprint Identification System (IAFIS). The results confirmed the identity of MONTOYA-Perez and that she is a citizen of Mexico who has been

4

previously removed from the United States. The record checks did not provide any evidence that MONTOYA-Perez legally entered the United States or had been issued any legal immigration document to allow her to enter or remain in the United States.

14. MONTOYA-Perez provided a sworn statement on August 29, 2025, stating that she was born in Mexico and is a Mexican citizen.

15. Review of the alien file for MONTOYA-Perez and queries in U.S. Border Patrol computer databases confirm no record exists of MONTOYA-Perez obtaining the express permission from the Attorney General or the Secretary of the Department of Homeland Security to reenter the United States following her last removal.

## CONCLUSION

16. Based on my training and experience as a Border Patrol Agent and the information contained in this continuation, there is probable cause to believe that Griselda MONTOYA-Perez reentered the United States after removal without the permission of the Attorney General or Secretary of Homeland Security, in violation of U.S.C. § 1326(a), which makes it a crime to reenter the country following removal without permission of the Attorney General.